

**Dated: April 16, 2026.**

_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 24-11038-CGB** |
| | § | |
| **JOHN MILLER, JR.,** | § | |
| | § | |
| | § | **Chapter 7** |
| Debtor. | § | |
| **JULIE MILLER,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Adv. No. 25-01060-CGB** |
| **JOHN MILLER, JR., HALEY MILLER, and THE LANE LAW FIRM,** | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS [ECF No. 11] AND PLAINTIFF'S MOTION TO REMAND OR ABSTAIN [ECF No. 18]

1

## Introduction

This highly contentious adversary proceeding is a removed state court lawsuit stemming out of a financial dispute between an individual debtor and his ex-wife. The plaintiff sued the debtor, his current wife, and the law firm representing the debtor for a variety of state causes of action. In this opinion, the Court considers the bounds of "related to" jurisdiction and holds that simply being a relative of the debtor is not enough to establish "related to" jurisdiction. And given the lack of any grounds for exercising jurisdiction over the plaintiff's claims against the debtor's current wife, and despite its concerns that those claims are (at best) difficult to understand, nonetheless, this Court remands them back to the state court. Because the claims against the debtor are so closely and thoroughly intertwined with the claims against his current wife, the Court permissively abstains from exercising jurisdiction over those claims as well, and thus remands them to state court. Finally, however, the Court exercises jurisdiction over, and dismisses, the claims against the law firm, for failure to state a claim upon which relief can be granted.

## Procedural Background

On August 29, 2024, John Miller, Jr. (the "Debtor"), represented by The Lane Law Firm, PLLC (the "Lane Firm"), filed an individual chapter 7 bankruptcy case. Julie Miller, (the "Plaintiff") was not listed as a creditor in the Debtor's individual case.[1] On December 17, 2024, the Debtor received a chapter 7 discharge and the case was subsequently closed.[2]

Before the Debtor's individual case was filed, the Debtor's business, Packet Construction, LLC ("Packet Construction") filed a subchapter V bankruptcy case.[3] Packet Construction is also represented by the Lane Firm.[4] Julie Miller was originally not listed as a creditor in Packet Construction's bankruptcy case either.[5] The Court confirmed Packet Construction's plan of reorganization on April 4, 2024.[6]

On July 7, 2025, the Plaintiff filed a state court petition (the "State Court Petition") against the Debtor, Haley Miller, and the Lane Firm (the "Defendants")

---

[1] Case No. 24-11038, ECF No. 1.
[2] Case No. 24-11038, ECF No. 18.
[3] Case No. 23-10860, ECF No. 1.
[4] Case No. 23-10860, ECF No. 41 (Order Approving the Lane Law Firm, PLLC as Counsel for the Debtor-in-Possession).
[5] *Compare* Case No. 23-10860, ECF No. 1 (schedules filed October 12, 2023), *with* Case No. 23-10860, ECF No. 116, at 5 (amended schedules filed October 15, 2025, including Julie Miller's claim).
[6] Case No. 23-10860, ECF No. 98.

alleging claims for (I) Fraudulent Inducement; (II) Fraud by Misrepresentation; (III) Common Law Fraud; (IV) Conspiracy; (V) Unjust Enrichment; and (VI) Conversion.[7]

Several months later, on November 5, 2025, the Defendants removed the State Court Lawsuit to this Court, which initiated this adversary proceeding.[8] In the Notice of Removal, the Defendants argue that removal is proper because the lawsuit violated the discharge injunction in the Debtor's individual bankruptcy case.[9] The Debtor then moved to reopen his chapter 7 case to assert claims against the Plaintiff for violating his discharge injunction, and the case was reopened on December 9, 2025.[10] The Debtor's Motion for Contempt related to the discharge injunction claims remains pending in the main bankruptcy case.[11]

Currently pending in this adversary proceeding are *Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Petition* (the "Motion to Dismiss")[12] and the Plaintiff's *Motion to Remand* (the "Motion to Remand").[13]

In the Motion to Dismiss, the Defendants seek dismissal of the six causes of action in the State Court Petition for failure to state a claim pursuant to Rule 12(b)(6). In response, the Plaintiff alleges that the Court lacks subject matter jurisdiction over this adversary proceeding and contends that the State Court Petition pleads sufficient facts to support her causes of action.[14] In their reply, the Defendants argue that the Court has jurisdiction over this matter and the non-Debtor parties because "Haley Miller [is] quite literally related to the Chapter 7 Debtor, Mr. Miller, by marriage, and The Lane Law Firm was his counsel during the Chapter 7."[15]

In the Motion to Remand, the Plaintiff argues that the Court lacks subject matter jurisdiction over the case or, alternatively, asks the Court to abstain pursuant

---

[7] ECF No. 1-2 (State Court Petition).

[8] Notice of Removal, ECF No. 1.

[9] *Id.* at ¶ 9.

[10] Case No. 24-11038, Mot. to Reopen, ECF No. 24; Order Granting Mot. to Reopen, ECF No. 56.

[11] Case No. 24-11038, ECF No. 25. The Court will rule on the Motion for Contempt by separate order entered in the main case.

[12] Mot. to Dismiss, ECF No. 11.

[13] Mot. to Remand, ECF No. 18.

[14] Resp. to Mot. to Dismiss, ECF No. 24. The Plaintiff also purports to seek sanctions against Defendants' counsel, but reason for imposing sanctions appears lacking, not to mention that this is not procedurally the proper way to seek such sanctions.

[15] Reply, ECF No. 26.

to 28 U.S.C. § 1334(c)(2) because the proceeding is based on state law claims and there is no other basis for federal jurisdiction.[16]

## Factual Background and Allegations

According to the State Court Petition, at some point following the Debtor's divorce from the Plaintiff, the Debtor asked the Plaintiff for a $150,000 short-term loan that he said he would quickly pay back from anticipated receivables, plus $25,000 and interest.[17] The Plaintiff alleges that the Debtor said that he needed the money to keep afloat the family business, Packet Construction, which employed several family members of both the Debtor and the Plaintiff.[18] The Plaintiff alleges that this was untrue and that the money was instead used to fund the lavish living expenses of Debtor and his new wife, Defendant Haley Miller, and to hire Defendant Lane Law Firm (the "Lane Firm") to file bankruptcy for Packet Construction.[19]

After the Plaintiff demanded repayment of the loan on May 29, 2025, she was informed by the Lane Firm that the loan had been dealt with in Packet Construction's bankruptcy.[20] However, in actual fact, Packet Construction failed to list the $175,000 debt in its bankruptcy schedules.[21] The Lane Firm also allegedly said that the loan had been discharged through the Debtor's personal bankruptcy.[22] But again, the loan had not been scheduled in Mr. Miller's personal case either.[23] In sum, the Plaintiff alleges that the Debtor and the Lane Firm concealed the loan from the bankruptcy court and concealed the bankruptcy cases from the Plaintiff.[24]

In the Motion to Dismiss, the Defendants provide their version of events. They allege that on May 9, 2022, the Plaintiff loaned $150,000 to Packet Construction, not the Debtor, by way of a promissory note that was signed by the Debtor solely in his capacity as a member of Packet Construction.[25] They contend that the promissory note was inadvertently left off Packet Construction's original schedules, which were filed on October 12, 2023, but that the schedules have now been amended to include

---

[16] Mot. to Remand, ECF No. 18.
[17] ECF 1-2 at 3.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 3–4.
[24] *Id.*
[25] Mot. to Dismiss, ECF No. 11, ¶ 8.

4

the Plaintiff's unsecured claim on October 15, 2025.[26] The Defendants therefore contend that the note is included in Packet Construction's separate chapter 11 bankruptcy case, in which a plan was confirmed non-consensually on April 3, 2024.[27] Under the terms of the plan, unsecured creditors were to be paid 3.79% of their claims over 60 months, meaning if the Plaintiff's claim were included in distributions, she would receive $5,174.90 over the life of the plan.[28] However, the Defendants also state Packet Construction's plan payments are not being made and operations have terminated.[29] Thus, the Defendants say that Packet Construction cannot in good faith amend its plan to include the Plaintiff's claim.[30] But they add that because of the failure of the plan, the Plaintiff's claim against Packet Construction will not be discharged, and should the business discover assets of any value or restart its operations, the Plaintiff would still be able to assert her claim against Packet Construction.[31]

Because the promissory note was between the Plaintiff and Packet Construction, the Defendants argue that the debt was not and should not have been included in the Debtor's individual bankruptcy case.[32] Furthermore, any debt related to the loan would have been discharged on December 17, 2024. The Defendants also contend that the Plaintiff violated the Debtor's discharge by filing the State Court Petition and attempting to collect debt owed by Packet Construction.[33]

**Analysis**

### A. The Court has jurisdiction over the claims against John Miller and the Lane Law Firm but not those against Haley Miller.

This Court derives its statutory subject matter jurisdiction from several sources. First, 28 U.S.C. § 1334 establishes that federal district courts have primary jurisdiction over bankruptcy cases.[34] Next, 28 U.S.C. § 157(a) gives district courts

---

[26] *Id.* at ¶ 9.

[27] *Id.* at ¶ 10.

[28] *Id.*

[29] *Id.* at ¶ 11.

[30] *Id.*

[31] As of April 16, 2026, the Plaintiff still has not filed a motion asking the Court to extend the claims bar date as to her claim or filed a claim in the Packet Construction case.

[32] The Debtor amended his schedules on January 6, 2026, to include Julie Miller's claim, which he marked as contingent and disputed. Case No. 24-11038, ECF No. 52, at 15.

[33] Mot. to Dismiss, ECF No. 11.

[34] 28 U.S.C. § 1334.

authority to refer all bankruptcy cases to bankruptcy courts.[35] The District Court for the Western District of Texas has chosen to do so by entering an order directing that "[a]ll bankruptcy cases and proceedings under Title 11 of the United States Code, or arising from or related to any case or proceeding filed under Title 11, shall be automatically referred to the bankruptcy judges of this district."[36]

Section 157 further defines the bounds of bankruptcy court jurisdiction. Under § 157(b)(1), bankruptcy judges have authority to "determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments" subject to review by district courts.[37] "A proceeding is core under section 157 if it invokes a substantive right provided by title 11 or . . . by its nature, could arise only in the context of a bankruptcy case."[38] Relevant here, § 157(b)(2) states that core proceedings include (but are not limited to) "matters concerning administration of the estate," "allowance or disallowance of claims against the estate," and "determinations as to the dischargeability of particular debts."[39]

In addition to core proceedings, § 157(c) provides that bankruptcy courts may also hear a proceeding that is "related to" a case under title 11.[40] With all parties' consent, the bankruptcy court can issue a final judgment in actions that are related to the bankruptcy case.[41] Absent such consent (and such consent is lacking from Plaintiff),"the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."[42]

In sum, these provisions give bankruptcy courts authority to hear "(1) 'cases under title 11;' (2) 'proceedings arising under title 11;' (3) 'proceedings arising in a

---

[35] 28 U.S.C. § 157(a).

[36] Order of Reference of Bankruptcy Cases and Proceedings (W.D. Tex. Oct. 4, 2013).

[37] 28 U.S.C. § 1587(b)(1).

[38] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987).

[39] 28 U.S.C. § 157(b)(2).

[40] 28 U.S.C. § 157(c)(1).

[41] 28 U.S.C. § 157(c)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684–85 (2015); *VSP Labs, Inc. v. Hillair Capital Invs., L.P. (In re PFO Global, Inc.)*, 26 F. 4th 245, 253 (5th Cir. 2022).

[42] 28 U.S.C. § 157(c)(1).

case under title 11;' and (4) 'proceedings related to a case under title 11.' These four categories 'conjunctively . . . define the scope of [statutory] jurisdiction.'"[43]

When claims that relate to a bankruptcy case are pending in state court, 28 U.S.C. § 1452(a) gives parties authority to remove such claims to federal district courts.[44] At that point, the order of reference discussed above grants the bankruptcy court authority to hear these state law claims to the extent allowed by governing law. Alternatively, under § 1452(b), the bankruptcy court can remand the causes of action "on any equitable ground."[45]

In her *Motion to Remand*, the Plaintiff contends that this Court lacks subject matter jurisdiction over this lawsuit, citing § 1452(b). But § 1452(b) simply grants the court authority to remand the lawsuit "on equitable grounds." It does not somehow deprive the Court of *jurisdiction*. However, because the Plaintiff challenges this Court's jurisdiction, and despite her failure to cite any relevant section or law, the Court will carefully review whether it has jurisdiction to hear the claims asserted in the State Court Petition.

### 1. The Court has jurisdiction over the claims against the Lane Firm.

The Lane Firm represents the Debtor in his individual bankruptcy case and in this adversary proceeding as well as representing Packet Construction in its chapter 11 case. The State Court Petition includes allegations that the Lane Firm conspired with the other Defendants to conceal the Plaintiff's claim from the bankruptcy court and the bankruptcy cases from the Plaintiff. Obviously, these claims are "inseparable from the bankruptcy context."[46] Thus, the claims against the Lane Firm are "core" claims related to administration of the Debtor's bankruptcy case, and the Court has jurisdiction over the claims.

---

[43] *Deelen v. Dickson (In re McDermott Int'l, Inc.)*, No. 23-20436, 2024 WL 3875141, at *2 (5th Cir. Aug. 20, 2024) (first quoting 28 U.S.C. §§1334(a)–(b) and 157 (a)–(b)(1), and then quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)).
[44] 28 U.S.C. § 1452(a).
[45] 28 U.S.C. § 1452(b).
[46] *SR Construction Inc. v. RE Palm Springs II, L.L.C. (In re RE Palm Springs II, L.L.C.)*, 106 F.4th 406, 414 (5th Cir. 2024) (quoting *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931 (5th Cir. 1999)).

### 2. The Court has jurisdiction over the claims against John Miller.

The State Court Petition brings claims against John Miller that are based on conduct that occurred before the Debtor filed bankruptcy. The alleged injuries suffered by Plaintiff constitute "claims" within the meaning of bankruptcy law. Section 101(5)(A) of the Bankruptcy Code broadly defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[47] The Plaintiff's claims against John Miller relate to pre-petition conduct and derive from the parties' pre-petition relationship; they are thus "claims" that existed on the petition date.[48] Those claims (and any judgment ultimately awarded on the basis of them) would be considered, under bankruptcy law, pre-petition claims against the Debtor's bankruptcy estate, and any liability deriving from them would be subject to discharge, unless the Court determined that the debt was non-dischargeable pursuant to § 523 of the Bankruptcy Code. The determinations of whether a claim should be allowed and whether a debt is non-dischargeable are core bankruptcy matters over which the Court undoubtedly has jurisdiction.[49]

Typically, in a chapter 7 case a creditor must file a non-dischargeability action "within 60 days after the first date set for the 341(a) meeting of creditors."[50] But under § 523(a)(3), a chapter 7 discharge *does not* discharge a debtor from debt that is not listed or scheduled in time to permit the creditor to timely file a proof of claim or request a determination that the debt is non-dischargeable.[51] When the Debtor's individual case was originally filed, he did not schedule the Plaintiff with a claim, and she did not receive notice of the bankruptcy case in time to file a claim or request that the Court determine whether the debt should be deemed non-dischargeable.

---

[47] 11 U.S.C. § 105(A).

[48] *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1274–78 (5th Cir. 1994).

[49] 28 U.S.C. §§ 157(b)(2)(B), (I).

[50] Fed. R. Bankr. P. 4004(a).

[51] 11 U.S.C. § 523(a) ("(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . .").

Thus, under § 523(a)(3), the claim could not have been discharged by the 2024 discharge order.

But now the Debtor's individual case is reopened, and the Debtor has scheduled the Plaintiff with a (disputed) claim. [52] Thus, the Court has core jurisdiction to determine whether the claim should be allowed and, if requested, whether it should be deemed non-dischargeable.[53]

### 3. The Court lacks jurisdiction over the claims against Haley Miller.

#### i. "Literal related to jurisdiction" is not a thing, and the claims against Haley Miller are not "related to" the bankruptcy.

Although the Defendants do not address jurisdiction in depth in their pleadings, they assert, rather creatively, that the Court has jurisdiction over Haley Miller because she is literally "related to" the Debtor, through their marriage. But as discussed above, § 157(c) allows bankruptcy courts to hear "a proceeding that is not a core proceeding but that is otherwise *related to a case under title 11*."[54] Haley Miller is obviously not "a case under title 11" and her relationship to the Debtor alone is not sufficient to confer jurisdiction over the claims against her on this Court.

While it is true that the traditional formulation of related to jurisdiction is "whether the outcome of a proceeding could conceivably have *any* effect on the estate being administered in bankruptcy," a bankruptcy court's "related to" jurisdiction is not limitless. [55] "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the *bankrupt estate*."[56]

Unfortunately for the Defendants, their proposed "literal related to doctrine" has no basis in law, and it would sweep far too wide. Applying bankruptcy

---

[52] *See* Case No. 24-11038, ECF No. 46 (order reopening case) and ECF No. 52 at 15 (amended Schedule F adding Julie Miller's claim as contingent and disputed).

[53] *See* Fed. R. Bankr. P. 3002(c)(3) (allowing a creditor to file a proof of claim 30 days after entry of a final judgment against the debtor).

[54] 28 U.S.C. § 157(c)(1).

[55] *PFO Global, Inc.*, 26 F.4th at 252 (quoting *In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 547 (5th Cir. 2002)).

[56] *Galaz v. Galaz (In re Galaz)*, 765 F.3d 426, 430 (5th Cir. 2014) (quoting *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)).

jurisdiction over individuals solely because of their relationship with the Debtor would go much too far. For instance, while it is certainly "conceivable" that a lawsuit against an adult child would have an "effect" on most parents, due to their love for their child and perhaps even due to material support they might feel obligated to provide for their child, the lawsuit would not for that reason be "related to" the bankruptcy case of the parents. While the Court acknowledges the ingenuity of debtor's counsel in trying to forge a new scope of the meaning of "related to," that effort must fail.

Instead, the Court must apply the more traditional "related to" analysis and consider whether the claims against Haley Miller could conceivably impact the handling or administration of the Debtor's bankruptcy estate. At this point, aside from the Plaintiff's claim, the Debtor's chapter 7 bankruptcy case has been fully administered. It was reopened solely for the purpose of scheduling the claim and removing the State Court Petition to this Court. As discussed above, the Plaintiff now has an opportunity to file a claim and seek a non-dischargeable judgment—although she has yet to file a claim or seek such relief in this Court. If the Plaintiff files a claim and successfully obtains a non-dischargeable judgment against the Debtor and also obtains a judgment against Haley Miller, it is conceivable that using community marital property to pay the judgment against Haley Miller might make it more difficult for the Debtor to pay his own non-dischargeable debt. But the Debtor's ability to pay that debt would still not affect the bankruptcy estate because it does not involve *estate* assets or liabilities. And so, regardless of how such hypothetical non-dischargeability litigation might turn out, awarding a judgment against Haley Miller could not alter or otherwise impact the bankruptcy estate.

Therefore, the Court cannot exercise "related to" jurisdiction over the claims asserted against Haley Miller, even though she is "actually related to" the Debtor.

### ii. In the Fifth Circuit, bankruptcy courts cannot exercise supplemental jurisdiction.

Where claims in a proceeding are so related that they form part of the same case or controversy, some bankruptcy courts have applied 28 U.S.C. § 1367 to exercise supplemental jurisdiction over such claims even if they do not fall under their "related to" jurisdiction.[57]

---

[57] 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

In the abstract, this case would be a plausible contender for the exercise of such jurisdiction. The claims against Haley Miller, while elaborated only very thinly in the Plaintiff's Petition, appear very thoroughly factually intertwined with the claims against the Debtor.

But the Fifth Circuit [58] and many other courts [59] reject the exercise of supplemental jurisdiction by bankruptcy courts because § 1367 only expressly applies to district courts and § 157, the more specific statute governing bankruptcy jurisdiction, does not extend supplemental jurisdiction to bankruptcy courts. This Court is, of course, bound by Fifth Circuit precedent. Therefore, the Court cannot exercise supplemental jurisdiction over the Haley Miller claims.

---

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."). *See, e.g.*, *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir. 2005); *Century 21 Real Estate, LLC v. Prestige Realty Grp. of Ohio & Florida, LLC (In re Prestige Realty Grp. of Ohio & Florida, LLC)*, 420 B.R. 894, 898–900 (Bankr. S.D. Fla. 2009) (exercising supplemental jurisdiction over a non-debtor defendant in an adversary proceeding where the claims arose "from the same core of facts"); *Hosp. Ventures/LaVista v. Heartwood 11, L.L.C. (In re Hosp. Ventures/LaVista)*, 358 B.R. 462, 474–81 (Bankr. N.D. Ga 2007) (exercising supplemental jurisdiction over matters that have "a nexus with a primary claim arising under the Bankruptcy Code within the district court's jurisdiction"); *Pierce v. Conseco Fin. Servicing Corp. (In re Lockridge)*, 303 B.R. 449, 455 (Bankr. D. Ariz. 2003) ("Thus even if bankruptcy jurisdiction did not exist under § 1334, supplemental jurisdiction may exist under § 1367 if the state law claims are so related. But the use of the identical term 'related to' in both § 1334 and §1367 also suggests that supplemental jurisdiction is what Congress always intended when it used that term in § 1334.").

[58] *Walker*, 51 F.3d at 572–73 ("Simply put, even assuming that a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction described in 28 U.S.C. § 1334, there is nothing in the jurisdictional statutes to indicate that the district court could refer such a case to a bankruptcy court.").

[59] *See, e.g.*, *Halvajian v. Bank of New York, N.A.*, 191 B.R. 56, 58–59 (D.N.J. 1995)*; Samson Res. Co. v. J. Aron & Co. (In re SemCrude, L.P.)*, No. 09-52530, 2010 WL 5140487, at *18 (Bankr. D. Del. Dec. 13, 2010)*; Scully v. Danzig (In re Valley Food Servs., LLC),* 400 B.R. 724, 728–30 (Bankr. W.D. Mo. 2008); *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 59–63 (Bankr. S.D.N.Y. 2006); *Dawson v. J&B Detail, L.L.C. (In re Dawson)*, No. 05-1463, 2006 WL 2372821, at *6 n.2 (Bankr. N.D. Ohio Aug. 15, 2006), *aff'd sub nom. Dawson v. J & B Detail, L.L.C.*, No. 106CV1949, 2006 WL 3827459 (N.D. Ohio Dec. 27, 2006).

### B. Plaintiff failed to state a claim upon which relief can be granted against the Lane Firm.

Defendants bring their Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding via Federal Rule of Bankruptcy Procedure 7012. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must both "describe the claim in enough detail to give fair notice of the claim and the grounds for it" and "state a claim 'plausible on its face,' meaning the plaintiff's right to relief must rise above a 'speculative level.'"[60] In making this determination, the Court must accept all of plaintiff's allegations as true.[61]

It is difficult to determine from the face of the pleadings exactly which allegations Plaintiff intends to bring against the Lane Firm.[62] However, the Lane Firm is mentioned in the sections of the complaint discussing common law fraud,[63] conspiracy,[64] unjust enrichment,[65] and conversion.[66]

As a preliminary matter, and for the avoidance of doubt, Defendants' Motion to Dismiss is granted with prejudice as to the Lane Firm for the fraudulent inducement and fraud by misrepresentation claims, as the Lane Firm is not even mentioned in those sections of the live pleading.[67]

---

[60] *Curtis v. L. Off. Of Rogelio Solis PLLC (In re Josiah's Trucking, LLC)*, 645 B.R. 208, 214 (Bankr. S.D. Tex. 2022) (footnotes omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007)). Stated otherwise, the plaintiff must satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008.

[61] *Ballard v. Wall*, 413 F.3d 510, 514–15 (5th Cir. 2005) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999)).

[62] *See generally* Pl.'s Compl., ECF No. 1.

[63] ECF No. 1-2 at 6 ("The Defendant law firm falsely asserted that this money had been noticed in the business bankruptcy, they knew or should have known which assets were included in the Bankruptcy.").

[64] *Id.* at 7 ("Lane Law Firm was paid with proceeds of the money Plaintiff provided to Defendant Miller that he misrepresented as a loan.").

[65] *Id.* at 8 (referring to "legal fees to Defendant Law Firm").

[66] *Id.* ("Miller then referred Plaintiff's counsel to his bankruptcy lawyers who misrepresented the debt had been discharged in Bankruptcy.").

[67] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing *Twombly*, 550 U.S. at 555)).

Plaintiff's remaining allegations against the Lane Firm do not fare much better. In Texas, the attorney immunity doctrine is a "comprehensive affirmative defense protecting attorneys from liability to non-clients."[68] Generally, under Texas law, "attorneys are immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.'"[69] However, an attorney is "not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'"[70] Here, Plaintiff has not asserted that she was ever a client of the Lane Firm. Therefore, the Lane Firm could only plausibly be held liable for damages arising from "wrongful conduct outside the scope of representation."[71]

In her common law fraud claim, Plaintiff asserts that the Lane Firm "falsely asserted that [the alleged loan] had been noticed in the business bankruptcy" and that it "knew or should have known which assets were included in the Bankruptcy."[72] Even accepting Plaintiff's allegations as true, fraud within the scope of client representation is not excepted from attorney immunity.[73] Communications with a potential creditor in a client's bankruptcy case are certainly within the scope of client representation.[74] Further, even if the attorney immunity doctrine was not at play, this claim could not succeed because the Plaintiff could not prove that she "actually and justifiably relied upon the representation" due to the general principal that "a third party's reliance on an attorney's representation is not justified when the

---

[68] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

[69] *Id.* at 481 (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (collecting cases).

[70] *Id.* at 482 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] March 20, 2008, pet. denied) (mem. op. on reh'g)).

[71] *Id.* at 484.

[72] ECF No. 1-2 at 6.

[73] *See Cantey Hanger, LLP*, 467 S.W.3d at 484. The Court also notes that the federal pleading standards require a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b), made applicable to this case by Fed. R. Bankr. P. 7009. Plaintiff did not do so.

[74] *See, e.g.*, *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (characterizing "the filing of lawsuits and pleadings, the providing of legal advice upon which the client acted, and awareness of settlement negotiations" as "acts taken and communications made to facilitate the rendition of legal services"); *see also White v. Bayless*, 32 S.W.3d 271, 275–77 (Tex. App.—San Antonio 2000, pet. denied) (affirming summary judgment in attorneys' favor in case alleging conspiracy to commit fraud involving bankruptcy filings).

13

representation takes place in an adversarial context."[75] Therefore, Defendants' motion to dismiss is granted with prejudice as to the common law fraud claim against the Lane Firm.

Plaintiff's conversion claim appears to have little if anything to do with the Lane Firm. It merely alleges that "[Debtor] then referred Plaintiff's counsel to his bankruptcy lawyers who misrepresented the debt had been discharged in Bankruptcy."[76] Under Texas law, the elements of conversion are:

> (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. The plaintiff must also prove damages that are the proximate result of the defendant's conversion.[77]

Plaintiff has not alleged any conduct by the Lane Firm that could potentially satisfy these elements. Therefore, the conversion claim against the Lane Firm is likewise dismissed with prejudice.

Plaintiff's unjust enrichment and conspiracy claims against the Lane Firm simply allege that the Lane Firm was paid with money allegedly obtained by Debtor via unscrupulous means.[78] The Court will address each in turn.

Whether unjust enrichment exists as an independent cause of action is somewhat unsettled in Texas.[79] However, the doctrine has been summarized by the Court of Appeals in Texarkana as follows:

---

[75] *See JPMorgan Chase Bank, N.A. v. Orca Assets, G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)) (listing the elements of fraud); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 794 (Tex. 1999) (collecting cases) (discussing reliance on opposing counsel's statements).

[76] ECF No. 1-2 at 8.

[77] *Senior Care Living VI, LLC v. Preston Hollow Cap., LLC*, 695 S.W.3d 778, 816 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (citations omitted) (citing *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)).

[78] *See* ECF No. 1-2 at 7 ("Lane Law Firm was paid with the proceeds of the money Plaintiff provided to Defendant Miller that he misrepresented as a loan."); *id.* at 8 (alleging that "Defendants used Plaintiff's money" for "legal fees to Defendant Law Firm").

[79] *See, e.g.*, *Ed & F Man Biofuels Ltd v. MV FASE*, 728 F.Supp.2d 862, 869–70 (S.D. Tex. 2010) (contrasting the Texas Supreme Court's implication that unjust enrichment is a separate cause of action with other Texas courts' conclusions that it is but a theory of liability (collecting cases)).

14

The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties. When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation to restore the benefits to the plaintiff. Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.[80]

Here, Plaintiff's pleading has not sufficiently alleged any way that the Lane Firm has been unjustly enriched nor any benefit that this Court could plausibly restore to the Plaintiff. It is not alleged that the Lane Firm received *anything* from Plaintiff, rather merely that their client, the Debtor, paid them "legal fees." Therefore, Plaintiff's claim of unjust enrichment is dismissed with prejudice.

In Texas, "civil conspiracy is a theory of vicarious liability and not an independent tort."[81] It follows that an underlying tort is required to be alleged for a conspiracy to exist.[82] Plaintiff's pleading simply fails to allege an underlying tort for which the Lane Firm could be held liable. Therefore, Plaintiff's claim of conspiracy is dismissed with prejudice.

The Court will decline to allow Plaintiff to amend her complaint in an attempt to sufficiently plead these allegations against the Lane Firm. "An 'amendment is futile if it would fail to survive a Rule 12(b)(6) motion.'"[83] As discussed above, there is no way that Plaintiff could succeed on any of her claims against the Lane Firm. Therefore, all claims against the Lane Firm are dismissed with prejudice.

---

[80] *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 96 (Tex. App.—Texarkana, 1996) (citations omitted).

[81] *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

[82] *Id.* at 142 ("Civil conspiracy requires an underlying tort that has caused damages." (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996))). *Cf. id.* at 141 ("Civil conspiracy depends entirely on the injury caused by the underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself." (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968)))).

[83] *CH Offshore, Ltd. v. Mexiship Ocean CCC S.A. de C.V.*, 163 F.4th 171, 184 (5th Cir. 2025) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

**C. The Court will permissively abstain from deciding the claims against John Miller and will remand them to state court.**

While it is sometimes true that a bankruptcy court *must* abstain from considering certain state law claims,[84] a court may *choose* to abstain "in the interest of justice, or in the interest of comity with State courts or respect or State law"[85] even if it has core jurisdiction over the claims. Given that the Court does not have jurisdiction over Haley Miller and the remaining claims against the Debtor are state law claims, the Court must consider whether to abstain from the claims against the Debtor and remand them to state court.

Here, the claims against the Debtor and the claims against Haley Miller are all but identical, and they arise out of the same factual circumstances. As established above, the Court has no jurisdiction over Haley Miller. Therefore, the Court finds that it is in the interest of justice and judicial efficiency to permissively abstain under § 1334(c)(1) and remand those claims to the state court for determination.[86] If the Plaintiff is awarded a judgment against the Debtor, she may file a claim in this Court and seek a dischargeability determination at that time.[87]

**Conclusion**

For the reasons stated herein, the Court finds that it should dismiss the claims against the Lane Firm with prejudice and abstain and remand the claims against the Debtor and Haley Miller for determination by the state court. As these remaining claims are being remanded to state court, the Court also finds that this adversary proceeding should be dismissed. If the Plaintiff successfully obtains a judgment against the Debtor in the state court action, she may come back to this Court and seek a non-dischargeability determination at that time.

IT IS THEREFORE ORDERED that the claims against the Lane Firm are dismissed with prejudice.

---

[84] *See* 28 U.S.C. § 1334(c)(2).

[85] 28 U.S.C. § 1334(c)(1).

[86] *See generally Parkhouse v. Johnson (In re Johnson)*, No. 11-06020-CAG, 2012 WL 1110342, at *5 (W.D. Tex. Bankr. Apr. 2, 2012) (discussing non-exhaustive factors the court may consider when deciding whether to permissively abstain).

[87] *See* Fed R. Bankr. P. 3002(c)(3).

IT IS FURTHER ORDERED that the Court abstains and remands all remaining claims in this proceeding to state court.

IT IS FURTHER ORDERED that this adversary proceeding is hereby dismissed.

# # #